UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| PEGGY BANKS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>PARAMOUNT BUILDERS, INC.<br><br>                    Defendant. | Case No. 2:25-cv-202 |

**DEFENDANT PARAMOUNT BUILDERS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Paramount Builder's Inc. ("Paramount"), by and through its undersigned counsel, respectfully moves this Court for an order striking Plaintiff Peggy Banks' ("Plaintiff") class allegations from the Complaint for the following reasons:

**I.     INTRODUCTION**

Plaintiff seeks to represent two fundamentally flawed classes whose incurable defects warrant striking them at the outset, thereby preventing the unnecessary expenditure of time and resources on discovery.

The Do Not Call ("DNC") Registry Class is overly broad because it includes individuals who: 1) did not personally register their numbers on the National DNC Registry, 2) received third-party calls for which Paramount is not vicariously liable, 3) consented to calls from Paramount, and 4) have an established business relationship ("EBR") with Paramount.

The Internal DNC Class is overly broad because it includes individuals who: 1) received third-party calls for which Paramount is not vicariously liable and 2) renewed consent to Paramount after initially requesting that Paramount stop calling.

1

These numerous individualized issues, inherent to the overbroad definitions, defeat the commonality required under Rule 23 and preclude resolution of the claims through classwide proof.

Beyond being overly broad, the class definitions suffer from a second fatal defect—they are impermissibly based on merits-based criteria, as membership turns on whether a consumer received a "telephone solicitation" or "telemarketing" message. This practice runs afoul of the rule against one-way intervention, which prohibits allowing potential members to await a final judgment on the merits before deciding whether to join the class. *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974). *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974) ("One-way intervention occurs when potential members of a class are allowed to await...final judgement on the merits in order to determine whether participation [in the class] would be favorable to their interests.").

For these reasons, Paramount respectfully requests that the Court strike Plaintiff's class allegations in their entirety.

## II.     <u>FACTUAL ALLEGATIONS</u>

Plaintiff alleges Paramount made thirteen unsolicited telemarketing telephone calls and three text messages to her residential phone number, which she registered on the National DNC Registry. Complaint ("Compl.") ¶¶ 20-23, 28, 30-31, 34, 36. Plaintiff further alleges that she requested that Paramount stop calling her, but Paramount texted her one time and called her eleven times after this request was made. *Id*. at ¶¶ 24-25.

Based on those allegations, she seeks certification in the following classes:

**Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

>**Internal DNC Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop, and (5) within the four years prior to the filing of the Complaint..

*Id*. at ¶ 38.

But as discussed below, these classes are both overly broad and can never be certified as defined.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.,* 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). While motions to strike are not favored, they will be granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id*.

A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp*., 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id*.; *see also Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *5 (C.D. Cal. Feb. 11, 2019).

Decisions on class certification should be made "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943,

949 (6th Cir. 2011) ("[E]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."); *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817, 829 (N.D. Ill. 2013) ("The rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23.").

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *See, e.g., Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008). Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *see also Yagman v. Allianz Ins.*, No. LACV1500921JAKJCX, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pretrial proceedings").

### IV. ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

#### A. The Proposed Classes Are Overly Broad.

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna*

4

*Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at 3 (W.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("[The plaintiff's] proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant] would call those numbers to present special commercial offers. They have no grievance with the [defendant], and ... their inclusion in the proposed class definition renders it overbroad and the class unfit for certification"); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad). This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at 4 (N.D. Ill. Jan. 18, 2018); *see Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at 10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678 ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL

5

1027431, *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citing *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at *7 (S.D. Ind. Mar. 31, 2015)). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227; *see also Kohen,* 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.").

The principle that a defendant cannot be forced to litigate against a class populated by uninjured people was recently illustrated in the Fourth Circuit's decision in *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671 (4th Cir. 2024). There, the Fourth Circuit vacated a class certification where the class was defined simply as "[a]ll persons who worked as a shift manager" at the company. *Id*. at 677, 683. The Court condemned the definition as "too broad and ill-defined," reasoning that the class was impermissibly overly broad because it "risked including individuals who would not have a right to recovery but for the sweeping scope of the class certification itself." *Id.* at 681. That is precisely the error Plaintiff makes here.

The proposed class definitions are impermissibly overbroad because they are drafted to include individuals who have no actionable claim for several reasons. Both classes improperly include individuals who received calls from third parties for whom Paramount is not vicariously liable. The DNC Registry Class is also overly broad because it includes individuals who consented to receive calls, had an established business relationship with Paramount, or did not personally register their telephone numbers on the National DNC Registry. 47 C.F.R. § 64.1200(a)(1) (excluding calls "made with the prior express consent of the called party" from the regulation's

6

prohibitions on prerecorded calls); 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitations" to exclude calls "[t]o any person with that person's prior express invitation or permission"); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). Finally, the Internal DNC Class is flawed because it includes individuals who initially opted out of calls but later renewed their consent.

Because the class definitions are overly broad, striking them at this stage is warranted.

> 1. ***The Proposed Class Definitions Are Also Overly Broad Because Paramount is Not Liable for All Calls Made on Its "Behalf."***

To prevent "definitional overbreadth," a plaintiff's legal theory must "actually map onto the membership of the class," ensuring a "a reasonably close fit between the class definition and the chosen theory of liability." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138, n. 7 (9th Cir. 2016). A defendant's liability for calls made by a third party hinges on establishing vicarious liability, as a party is only liable under the TCPA in accordance with traditional tort-related principles. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 583 (W.D. Pa. 2017) ("[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016)). Critically, a mere allegation that calls were made "on behalf of" a defendant is not legally sufficient to create liability without factual support. *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 WL 5016558, *3-4 (M.D. Fla. Aug. 7, 2023).

The court in *Worsham* clarified that, alone, the phrase "by or on behalf of" does not implicate an agency relationship or vicarious liability. *Id*. at *3. An agency relationship must exist. *Id*. While vicarious liability under the TCPA does "not require the usual level of particularity" from the complaint, a plaintiff must still "plausibly allege that [a third party] was acting as an agent

7

of [defendant], i.e. that [defendant] exercised control over, ratified or openly authorized [the third party's] actions." *Rosenberg v. LoanDepot.com L.L.C.*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020).

Here, Plaintiff's class definitions, which encompass individuals who received calls "on behalf of" Paramount, fail this standard. The Complaint contains no factual allegations to establish vicarious liability, such as the existence of an agency relationship, ratification, or control between Paramount and any third-party caller. In fact, Plaintiff only alleges receiving calls directly from Paramount itself. *See* Compl. ¶¶ 23-26. Without these necessary elements, the proposed classes improperly include vast numbers of individuals who have no actionable claim against Paramount. This defect means the definitions suffer from a fatal flaw that courts routinely reject: they sweep in persons who have no grievance against the defendant, rendering the classes overly broad and uncertifiable. *See supra* at pp. 5-6; 7A Wright & Miller, Fed. Prac. & Proc. § 1760 (3d ed. 2005) (a "class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative").

### 2. *Plaintiff's Proposed DNC Registry Class Is Overly Broad Because It Includes Members That Consented To Receive Calls From Paramount.*

Courts routinely reject class definitions that include members for whom issues of consent arise. *See Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) ("the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof….The 'disparate factual circumstances' regarding each class member's consent simply 'prevents the class from being cohesive and thus [renders] it unable to be certified under Rule 23(b)(2).'"); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who may have

8

consented to receiving calls from the defendant, thereby lacking standing under the TCPA); *see also Martinez v. TD Bank USA*, N.A., No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at \*12 (D.N.J. June 30, 2017) (holding that a TCPA class was not ascertainable because it would require mini trials to identify individuals who did not provide prior express consent); *see also Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification in a TCPA case and finding that the class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent); *Jamison v. First Credit Servs.*, 2013 WL 387217, at \*8 (N.D. Ill. July 29, 2013); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (finding that because the inclusion of a substantial number of people who voluntarily provided their phone numbers to receive commercial calls rendered the proposed class "overbroad and the class unfit for certification").

The term "telephone solicitation" expressly excludes calls made with prior express invitation or permission. *See* 47 C.F.R. § 64.1200(f)(15) (excluding from "telephone solicitation" any call to a person who has given prior express invitation or permission). And because the definition of "telephone solicitation" is defined to exclude calls made with prior express invitation or permission, the absence of prior express invitation or permission is an essential element that a plaintiff has the burden of proving under the TCPA's DNC provisions. *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014) ("The absence of express prior consent, however, is one of the three elements of a TCPA claim, which Plaintiff bears the burden of satisfactorily establishing for the Court."); *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at \*3 (N.D. Cal. Nov. 18, 2013) ("Because our court of appeals has stated that consent is an element of a prima facie TCPA claim, this order is duty-bound to place the burden on plaintiffs to prove a lack of prior express consent."). Thus, a plaintiff must plead all essential elements of his/her claims at the outset. *McDermet v. Trinity Heating & Air, Inc.*, No. CV 17-

9

10566, 2018 WL 840743, *2 (D. Mass. Feb. 12, 2018) (dismissing a claim due to the plaintiff's failure to plead the necessary elements of the claim) (citing *Gibbs v. SolarCity Corp.,* No. 16-cv-11010-TSH, 2017 WL 925003, at *5 (D. Mass. Mar. 8, 2017) (noting that a complaint must plead the necessary elements of a claim to establish plausibility and survive a motion to dismiss)). This is because individuals who have consented cannot assert valid TCPA claims regarding such calls. *See Barnes*, 2025 WL 1027431, at *5 (striking class allegations as overbroad because the proposed class included individuals who may have consented to receiving calls from Coca-Cola).

Here, Plaintiff's DNC Registry Class is overly broad because it fails to exclude individuals who provided "prior express invitation or permission" to receive calls from Paramount. Including these individuals—who lack standing and have no viable claim under the TCPA—renders the classes overly broad. *Walewski,* 502 F. App'x at 861; *Lackawanna Chiropractic P.C.,* 2019 WL 7195309 at 3 (citation omitted); *A Custom Heating & Air Conditioning, Inc.,* 2018 WL 488257 at *4; *Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421 at *10; *McElhaney,* 93 F.R.D. at 878. As such, the Court may properly strike Plaintiff's proposed DNC Registry Class.

    3.    ***The DNC Registry Class Is Overly Broad Because It Improperly Includes Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.***

The threshold requirement for bringing a claim under the TCPA's Do Not Call (DNC) provisions is clear and unambiguous: relief is only for a "residential telephone subscriber ***who has registered his or her*** telephone number.". 47 C.F.R. § 64.1200(c) (emphasis added). In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *Rombough*, 2022 WL 2713278, at *2. As the court in *Rombough* explained, "The plain language of § 64.1200(c) clearly requires that a person register their own telephone number on

the national do-not-call registry to have standing to sue under the TCPA's do-not-call provisions. The regulation's use of the phrase 'registered his or her telephone number' plainly contemplates that the person bringing suit must have been the one to place the number on the registry." *Id.*

This requirement cannot be reinterpreted in light of policy reasoning or legislative intent. Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *Campbell v. Wash. Cnty. Tech. Coll.,* 219 F.3d 3, 6 (1st Cir. 2000) ("As in other cases involving statutory interpretation, we look first to the Act's plain language. Absent ambiguity, the inquiry ends with the text of the statute.") (internal citations omitted). The regulation's text expressly mandates personal registration—no ambiguity exists that would justify looking beyond its clear language. *Id*. Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the DNC Registry.

Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003). Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Plaintiff's proposed DNC Registry Class definition ignores this mandatory prerequisite. The class is improperly defined to include countless individuals who have no standing because they merely acquired phone numbers that were previously registered by someone else. By including those who never performed the affirmative act of registering their own number, the definition contravenes the plain language of 47 C.F.R. § 64.1200(c). As such, the class necessarily encompasses numerous individuals with no standing to sue.

Plaintiff's will likely argue that this Court should rule as the courts did in *Callier* and *Abrahamian*. *Callier v. Am. Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022) and *Abrahamian v. loanDepot.com LLC*, 2024 U.S. Dist. LEXIS 44009, *5-6 (D. Az. March 13, 2024)). But these cases emphasize statutory intent rather than focusing on the clear language of the law, which explicitly requires personal registration. However, well-established precedent dictates that courts must first apply the plain language of a statute when it is clear and unambiguous. As the Fourth Circuit has held, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001); *see also Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012) ("The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written."). Here, the language is clear: the individual must personally register their number. *See* 47 C.F.R. § 64.1200(c).

As such, this Court should find personal registration is required to have a claim under the TCPA's DNC provision, and that, because Plaintiff's class definition includes individuals who did not personally register their phones on the national DNC registry, the class is overly broad. This fatal overbreadth warrants striking the class allegations. *See Walewski*, 502 F. App'x at 861; *Lackawanna Chriropractic P.C.*, 2019 WL 7195309, at *3.

> 4. ***The DNC Registry Class Definition Is Overly Broad Because It Includes Members That Have An EBR With Paramount.***

A plaintiff must prove that they received a "telephone solicitation" to establish a violation of the TCPA's Do-Not-Call (DNC) provisions. *See* 47 C.F.R. § 64.1200(c). The regulations, however, explicitly exclude calls made to any person with whom the caller has an EBR from the definition of a "telephone solicitation." 47 C.F.R. § 64.1200(a)(4)(ii). The absence of an EBR is

12

therefore a fundamental element of a plaintiff's DNC claim; to prove a violation, a plaintiff must first establish that the call they received qualifies as a "telephone solicitation." *McDermet*, 2018 WL 840743 *2; *see also Gibbs,* 2017 WL 925003 at *5. In other words, where an EBR exists, calls—even to numbers on the National DNC Registry—do not violate the DNC rules. Including individuals with an EBR in a DNC class thus renders the class definition fatally overbroad because these members, by definition, cannot assert a valid claim.

The proposed DNC Registry Class definition necessarily includes these non-claimants because it fails to carve out individuals who had or have an EBR with Paramount. This defect renders the class definition impermissibly overbroad, and it must therefore be stricken. *Walewski v. Hub Int'l Midwest Ltd.*, 502 F. App'x 860, 861 (11th Cir. 2012); *Lackawanna Chiropractic P.C. v. Bibero Transglobal, Inc.*, No. 3:19-CV-00921, 2019 WL 7195309, at *3 (M.D. Pa. Dec. 26, 2019); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 17 C 8813, 2018 WL 488257, at *4 (N.D. Ill. Jan. 19, 2018).

     **5.**    ***The Internal DNC Class Definition Is Overly Broad Because It Fails To Exclude Members Who Reconsented.***

A consumer's initial revocation of consent is not permanent and can be superseded by their subsequent actions. Telemarketing calls made after a consumer has revoked consent do not violate Section 64.1200(d) if that individual has subsequently re-consented to receiving such calls. *Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1306 (11th Cir. 2020) (granting the defendant's summary judgment motion due to the plaintiff reconsenting to receive calls).

Plaintiff's proposed Internal DNC Class definition is overly broad because it fails to account for these individuals who reconsented to receive telemarketing calls after initially revoking consent. Including such individuals results in a class that includes members without a valid grievance against Paramount—which renders the class definition overly broad and therefore, uncertifiable. *See Walewski*, 502 F. App'x at 861; *Lackawanna Chiropractic P.C.*,

13

2019 WL 7195309 at 3 (citation omitted); *A Custom Heating & Air Conditioning, Inc.*, 2018 WL 488257 at *4; *Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421 at *10; *McElhaney*, 93 F.R.D. at 878. Consequently, this class must be stricken.

**B.     The Proposed Class Members Lack Commonality.**

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be "questions of law or fact common to the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-478 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Commonality requires more than simply whether class members have suffered a violation of the same provision of law. *Controllable On-Site Prot. Sec. Sys., Inc. v. Telular Corp.*, No. 4:14CV00487 JM, 2016 WL 11778133, at *2 (E.D. Ark. Apr. 12, 2016) (quoting *Wal–Mart*, 131 S. Ct. at 2551 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' [internal citation omitted]. This does not mean merely that they have all suffered a violation of the same provision of law."); *see also* 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 6.20, at 6–82 (3d ed.1992) (noting that "[t]he plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similarly situated," and that class action pleadings "should not be merely conclusory"). Commonality cannot be based on whether the "all suffered a violation of the same provision of law" because "this does not ensure that a common answer can address the entire class's claims." *Stafford*, 123 F.4th at 681 (vacating the district court's ruling to certify classes because the plaintiffs failed to show a common contention could generate a single common answer for the entire class). "If, to make a prima facie

14

showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart, supra*, 564 U.S. 338 at 349.

Here, the proposed classes cannot be certified because they fail to meet the fundamental commonality requirement of Rule 23. The claims turn on a range of individual factual and legal issues that make it impossible to adjudicate liability on a classwide basis. The same defects that render these class definitions fatally overbroad also ensure their members lack the requisite commonality, as a uniform answer to liability is precluded from the outset.

First, commonality is absent in both classes because resolving liability for calls made by third parties would require member-by-member inquiries. To determine if Paramount is vicariously liable for any given call, the Court would need to conduct fact-intensive analyses into the existence of agency relationships, ratification, or Paramount's control over the caller. These questions cannot be resolved through common proof.

Second, the DNC Registry Class lacks commonality because it impermissibly includes individuals who consented to receive calls. Whether a class member provided prior express consent is a classic individualized defense that depends on the specific interactions between that person and Paramount, thereby splintering any potential common question.

Third, the DNC Registry Class is further fractured by the need to determine standing for each member. Standing to bring a TCPA do-not-call claim requires proving the affirmative act of

15

personal registration on the National DNC Registry. *See* 47 C.F.R. § 64.1200(c); *Rombough*, 2022 WL 2713278 at *2. Establishing this threshold requirement is an inherently individual inquiry, not a common question.

Fourth, the existence of an EBR also defeats commonality for the DNC Registry Class. Whether an EBR existed between Paramount and any given class member requires a member-specific analysis of their past transactions or inquiries, precluding a common resolution.

Finally, the Internal DNC Class lacks commonality because it includes individuals who may have reconsented to receive calls after initially opting out. Determining whether a prior opt-out was later invalidated by reconsent is an inherently individualized factual question that cannot be resolved on a classwide basis.

In sum, these issues make it impossible for the claims of all class members to be resolved "in one stroke." *Dukes*, 564 U.S. at 350. Therefore, the class allegations must be stricken.

**C.     Both Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depends On Resolution of Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3rd 1121, 1123-24 (9th Cir. 2017); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), lv. to app. den., No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible," such that identifying its members would not require a mini-hearing on

the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable). This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'"). A class must therefore be ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878 at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D.Ill.2008); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997).

Recently, the court in *Thompson* struck a class definition that was defined to include individuals who "received more than one telephone solicitation." *Thompson v. Vintage Stock, Inc.*, No. 4:23-CV-00042-SRC, 2024 WL 492052, at *10 (E.D. Mo. Feb. 8, 2024), *on reconsideration,* No. 4:23-CV-00042-SRC, 2024 WL 1636705 (E.D. Mo. Apr. 16, 2024). The court explained the "proposed class [would] require[] the [c]ourt to address contested elements of liability." *Id*. Similarly, in *Sowders v. Scratch Financial, Inc.*, the court granted the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)." *Sowders v. Scratch*

17

*Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, *9-10 (S.D. Ohio Nov. 14, 2023). The court found that this definition improperly predicated class membership on the ultimate legal conclusion of the claim. *Id*. Because determining whether the defendant's opt-out notice was legally compliant was a question "deeply enmeshed in the merits," it would be impossible to ascertain who was in the class until a judgment was rendered. *Id*. at *10.

This case is no different than *Thompson* and *Sowders*. Here, the proposed DNC Registry lass and Internal DNC Class's membership depends on whether or not an individual received a "telephone solicitation" or "telemarketing" call, respectively. To determine who is in the class, the Court would first need to review the content of the message for each call sent to class members to assess whether the call constitutes a "telephone solicitation" or "telemarketing." These plainly are merit determinations. *Massaro v. Beyond Meat, Inc.*, No. 320CV00510AJBMSB, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021) (denying a motion to dis-miss under 12(b)(1) because the court could not resolve the jurisdictional issue without also deciding the merits of the TCPA claim (i.e. whether or not a text message was set for a commercial purpose)); *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (whether or not a call is "telemarketing" is a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, *6 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class

definitions would be highly prejudicial to Paramount. Thus, this Court should strike the class allegations here and now.

## V. CONCLUSION

For the foregoing reasons, Paramount Builders respectfully requests the Court strike Plaintiff's class allegations to prevent the pursuit of an uncertifiable class.

Dated: June 2, 2025

Respectfully submitted,

/s/ *Barry Dorans*
Barry Dorans, Esq. VSB# 23472
WOLCOTT RIVERS GATES
200 Bendix Road, Suite 300
Virginia Beach, Virginia 23452
Telephone: (757) 497-6633
Facsimile: (757) 497-7267
dorans@wolriv.com

Eric J. Troutman (*pro hac vice*)
California Bar No. 229263
Puja J. Amin (*pro hac vice*)
California Bar No. 299547
Tori L. Guidry (*pro hac vice*)
Louisiana Bar No. 37704
TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (214) 758-1550
troutman@troutmanamin.com

*Counsels for Defendant Paramount Builders, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 2, 2025, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                   /s/ *Barry Dorans*
                                                   Barry Dorans